1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
Elaine A. Ryan(*To be Admitted Pro Hac Vice*)
eryan@bffb.com
Patricia N. Syverson (203111)
psyverson@bffb.com
Lindsey  M. Gomez-Gray (*To be Admitted Pro Hac Vice*)
lgomez-gray@bffb.com
2325 E. Camelback Road, #300
Phoenix, AZ  85016
Telephone:  (602) 274-1100
Facsimile:  (602) 274-1199

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Manfred P. Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com
Telephone:  (619) 756-7748
Facsimile:  (602) 274-1199

STEWART M. WELTMAN, LLC
Stewart M. Weltman (*To be Admitted Pro Hac Vice*)
53 W. Jackson Suite 364
Chicago, IL 60604
sweltman@weltmanlawfirm.com
Telephone:  (312) 588-5033
(Of Counsel Levin Fishbein Sedran & Berman)

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL  LERMA, On  Behalf  of Himself  and  All  Others  Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>GNC  CORPORATION,  a  Delaware corporation,<br><br>                    Defendant. | Case No.: **'13 CV 0933 CAB KSC**<br><br>**CLASS ACTION**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; and<br>2. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*<br><br>   DEMAND FOR JURY TRIAL |

Plaintiff Michael Lerma, by and through his attorneys, brings this action on behalf of himself and all others similarly situated against Defendant GNC Corporation ("GNC" or "Defendant") and states:

## NATURE OF ACTION

1.      GNC markets, sells and distributes a line of joint health dietary supplements under its "TriFlex" brand name.[1]  All three products bear the name TriFlex in bold, large letters, prominently at the top front of each label. The primary purported active ingredients in all of GNC's TriFlex Products are glucosamine hydrochloride and chondroitin sulfate.  Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, GNC promises that its maximum, clinical strength TriFlex Products will help promote mobility and flexibility, improve joint comfort and cushion joints.  For example, on each and every TriFlex Fast-Acting Triple Strength Product label, Defendant states that the Product's "maximum", "clinical strength" formula supports "joint comfort," improves joint flexibility and "joint cushioning," and helps to "regenerate cartilage and lubricate joints thus supporting joint health integrity and function." Similar statements are made on the other TriFlex Products, in that the labeling and packaging states that the Products help to "promote joint mobility and flexibility" and "joint cushioning" and "protects joints from wear and tear" (collectively, the "joint health benefit representations").

2.      Furthermore, the representations that Defendant makes on the TriFlex Products labels with respect to improving mobility and flexibility, helping with joint discomfort and cushioning joints are clearly directed at and, as a result, the majority of persons who purchase the TriFlex Products are persons suffering from osteoarthritis.  For example, the University of Chicago Medicine web site describes the symptoms of osteoarthritis as a breakdown of joint cartilage which in turn interferes with joint mobility

---

[1]  The TriFlex Products include, but are not limited to: (1) GNC TriFlex; (2) GNC TriFlex Fast-Acting; and (3) GNC TriFlex Sport (collectively, "the TriFlex Products" or "the Products"). Plaintiff reserves the right to include other Products upon completion of discovery.

**CLASS ACTION COMPLAINT**

and causes joint pain and stiffness[2] – these are almost verbatim the symptoms that Defendant represents the TriFlex Products will relieve. Thus, Defendant's representations, at a minimum, implicitly claim, using lay terminology, that the TriFlex Products have a positive effect on the characteristic symptoms of arthritis.

3. In truth, the TriFlex Products do not promote flexibility or mobility, relieve joint discomfort, or cushion joints. Clinical studies have proven that the primary active ingredients in the TriFlex Products, glucosamine and chondroitin, are ineffective, taken alone or in combination with the other ingredients in the Products, with regard to the purported joint health benefits represented on the Products' packaging and labeling. As a large scale study sponsored and conducted by the National Institute of Health ("NIH") concluded: "The analysis of the primary outcome measure did not show that [glucosamine and chondroitin], alone or in combination, was efficacious. . . ." Clegg, D., et al., Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis, 354 New England J. of Med. 795, 806 (2006) ("2006 GAIT Study"). While most of the clinical studies finding a lack of efficacy (using the same amounts of the ingredients as are in Defendant's TriFlex Products) were performed on subjects with arthritis, some were performed on "healthy" subjects. Moreover, experts in the field deem the arthritis clinical studies finding the ingredients to be inefficacious to be proxies for whether the ingredients are effective for both arthritic and non-arthritic users of these ingredients. As a result, in addition to affirmatively misrepresenting the joint health benefits of the TriFlex Products, Defendant's failure to disclose the facts regarding these studies also constitutes deception by omission or concealment. Thus, Defendant's joint health benefit representations and omissions are false, misleading and reasonably likely to deceive the public.

4. Despite the deceptive nature of Defendant's representations, Defendant conveys its uniform, deceptive message to consumers through a variety of media

---

[2] *See* http://www.uchospitals.edu/online-library/content=P00061.

**CLASS ACTION COMPLAINT**

including its website and online promotional materials, and, most important, at the point of purchase, on the front of the Products' packaging and/or labeling where it cannot be missed by consumers. The only reason a consumer would purchase the TriFlex Products is to obtain the advertised joint health benefits, which the Products do not provide.

5.      As a result of Defendant's deceptive joint health benefit representations, consumers – including Plaintiff and members of the proposed Class – have purchased Products that do not perform as advertised.

6.      Plaintiff brings this action on behalf of himself and all other similarly situated consumers to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the TriFlex Products. Based on violations of state unfair competition laws (detailed below), Plaintiff seeks injunctive and monetary relief for consumers who purchased the Products.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendant.

8.      This Court has personal jurisdiction over GNC because GNC is authorized to do and does business in California. GNC has marketed, promoted, distributed, and sold its TriFlex Products in California and GNC has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims

**CLASS ACTION COMPLAINT**

occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because GNC transacts substantial business in this District.

## PARTIES

10.    Plaintiff Michael Lerma resides in El Centro, California and is a resident of California. In or around October 2012, Plaintiff Lerma was exposed to and saw GNC's representations by reading the label of TriFlex Fast-Acting at a GNC store in El Centro, California. In reliance on the joint health benefit representations on the front, back and sides of the label, Plaintiff purchased TriFlex Fast-Acting and paid approximately $20.00 for the bottle. Had Plaintiff known the truth about Defendant's misrepresentations and omissions, including that the scientific evidence demonstrated that the Product was not effective as represented by Defendant, Plaintiff would not have purchased TriFlex Fast-Acting. Plaintiff used TriFlex Fast Acting as directed and, consistent with the scientific evidence that the Product was not effective, the Product did not work. As a result, Plaintiff suffered injury in fact and lost money.

11.    Defendant GNC Corporation is a corporation organized and existing under the laws of the state of Delaware, and is headquartered in Pittsburgh, Pennsylvania. GNC operates more than 4,800 retail locations throughout the United States, including California, and specializes in the sale of and advice to consumers about nutritional supplements. GNC is the nation's largest retailer of its kind. Upon information and belief, from its Regional Office in California, GNC promoted, marketed and sold the TriFlex products throughout the United States, including California.

## FACTUAL ALLEGATIONS

### The TriFlex Products

12.    GNC is the largest supplement retailer in the United States, operating over 4,800 retail locations where it sells retail goods, and gnc.com. This lawsuit concerns three of those products: (1) GNC TriFlex; (2) GNC TriFlex Fast-Acting; and (3) GNC

**CLASS ACTION COMPLAINT**

TriFlex Sport.[3]  The TriFlex products are available in 60, 120, and 240 count bottles. Screen shots of the TriFlex Products appear as follows:

 

13.     Since the Products' launch, GNC has consistently conveyed the message to consumers throughout the United States, including California, that the TriFlex Products, with their "maximum", "clinical" strength formulas, help to promote mobility and flexibility, improve "joint comfort," and cushion joints simply by taking the recommended number of tablets each day.  They do not.  GNC's joint health benefit representations are false, misleading, and reasonably likely to deceive the public.

14.     The primary active ingredients in all the TriFlex Products are glucosamine hydrochloride and chondroitin sulfate.  As more fully set forth below, the scientific evidence is that glucosamine and chondroitin, taken alone or in combination, do not provide the joint health benefits represented by GNC.

15.     In addition to the primary active ingredients, Defendant's TriFlex Products contain lesser amounts of other ingredients, including: methylsulfonylmethane ("MSM"); hyaluronic acid;  "a joint cushioning sports blend"  (consisting of  white willow bark, boswellia serrata, MSM, hyaluronic acid and hops cones extract); "a fast-acting comfort

---

[3] Plaintiff reserves the right to include other products upon completion of discovery.

**CLASS ACTION COMPLAINT**

blend" (consisting of Chinese skullcap root extract and clutch tree wood & bark extract).[4] As more fully discussed below, these ingredients are also not effective in providing the joint health benefits represented by Defendant.

16.    The TriFlex Fast-Acting bottle references one study purportedly supporting Defendant's "Clinical Strength" representation.  No information is included to enable consumers to locate and review the study.  But by making this representation Defendant is falsely representing that the scientific/clinical evidence supports the representations that it makes about its Products.  Likewise, the TriFlex Fast-Acting bottle also represents that "[s]cientific research" has shown that glucosamine and chondroitin "help to support the body's natural ability to regenerate cartilage and lubricate joints thus supporting joint health integrity and function" without reference to any specific scientific research.  By making references to clinical strength and that "scientific research" supports Defendant's joint health benefit claims, the burden is on Defendant to provide what it cannot – proof that these Products work as represented.  But, since the vast weight of competent and reliable scientific evidence is that the ingredients in Defendant's Products do not work as represented, these representations are false.

17.    Even though numerous clinical studies and the vast weight of competent clinical evidence have found that the primary ingredients in GNC's TriFlex Products, glucosamine and chondroitin, alone or in combination, are ineffective, GNC continues to state on the Products' packaging and labeling that the TriFlex Products, with their "maximum", "clinical" strength formulas, help to, *inter alia*: promote mobility and flexibility, improve "joint comfort," and cushion joints.  Front and side shots of a representative TriFlex Fast-Acting label appear as follows:

/ /

/ /

/ /

_____

[4] Clutch tree wood & bark extract is also known as black catechu.

6

Front                                                    Side





Copies of the TriFlex labels are attached hereto as Exhibit A

***Scientific Studies Confirm The TriFlex Products Are Not Effective***

18.     At least as early as 2004, clinical studies have found that glucosamine and chondroitin, alone or in combination, are not effective in providing the represented joint health benefits.

19.     For example, a 2004 study by McAlindon et al., entitled Effectiveness of Glucosamine For Symptoms of Knee Osteoarthritis: Results From an Internet-Based Randomized Double-Blind Controlled Trial, 117(9) Am. J. Med. 649 (Nov. 2004),

concluded that glucosamine was no more effective than placebo in treating the symptoms of knee osteoarthritis – in short, it was ineffective.

20.     Also as early as 2004, many studies confirmed there is a significant "placebo" effect with respect to consumption of products represented to be effective in providing joint health benefits such as Defendant's Products – 30% and more of persons who took placebos in these studies believed that they were experiencing joint health benefits when all they were taking was a placebo.  In this regard, a 2004 study by Cibere et al., entitled Randomized, Double-Blind, Placebo-Controlled Glucosamine Discontinuation Trial In Knee Osteoarthritis, 51(5) Arthritis Care & Research 738-45 (Oct. 15, 2004), studied users of glucosamine who had claimed to have experienced at least moderate improvement after starting glucosamine.  These patients were divided into two groups – one that continued using glucosamine and one that was given a placebo. For six months, the primary outcome observed was the proportion of disease flares in the glucosamine and placebo groups.  A secondary outcome was the time to disease flare. The study results reflected that there were no differences in  either  the  primary or secondary outcomes for glucosamine and the placebo.  The authors concluded that the study provided no evidence of symptomatic benefit from continued use of glucosamine – in other words, any prior perceived benefits were due to the placebo effect and not glucosamine.

21.     In the 2006 GAIT Study, the study authors rigorously evaluated the effectiveness of glucosamine and chondroitin, alone and in combination, on osteoarthritis for six months.  According to the study's authors, "The analysis of the primary outcome measure did not show that either supplement, alone or in combination, was efficacious. . ." 2006 GAIT Study at 806.[5]   Subsequent GAIT studies in 2008 and 2010 reported that

---

[5] The 2006 GAIT Study was funded by the National Center for Complementary & Alternative Medicine and the National Institute of Arthritis and Musculoskeletal and Skin Diseases, two components of NIH.

glucosamine and chondroitin did not rebuild cartilage[6] and were otherwise ineffective – even in patients with moderate to severe knee pain for which the 2006 GAIT study reported results were inconclusive.  *See* Sawitzke, A.D., et al., The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis: A GAIT Report, 58(10) J. Arthritis Rheum. 3183–91 (Oct. 2008); Sawitzke, A.D., Clinical Efficacy And Safety Of Glucosamine, Chondroitin Sulphate, Their Combination, Celecoxib Or Placebo Taken To Treat Osteoarthritis Of The Knee:  2-Year Results From GAIT, 69(8) Ann Rhem. Dis. 1459-64 (Aug. 2010).

22.    The GAIT studies are consistent with the reported results of prior and subsequent studies.  For example, a study by Rozendaal et al., entitled Effect of Glucosamine Sulfate on Hip Osteoarthritis, 148 Ann. of Intern. Med. 268-77 (2008), assessing the effectiveness of glucosamine on the symptoms and structural progression of hip osteoarthritis during 2 years of treatment, concluded that glucosamine was no better than placebo in reducing symptoms and progression of hip osteoarthritis.

23.    A 2010 meta-analysis by Wandel et al. entitled Effects of Glucosamine, Chondroitin, Or Placebo In Patients With Osteoarthritis Or Hip Or Knee: Network  Meta-Analysis, BMJ 341:c4675 (2010), examined prior studies involving glucosamine and chondroitin, alone or in combination, and whether they relieved the symptoms or progression of arthritis of the knee or hip.  The study authors reported that glucosamine and chondroitin, alone or in combination, did not reduce joint pain nor have an impact on the narrowing of joint space:  "Our findings indicate that glucosamine, chondroitin, and their combination do not result in a relevant reduction of joint pain nor affect joint space narrowing compared with placebo."  *Id.* at 8.  The authors went as far to say, "We believe

---

[6] To a similar effect a study by Kwok, et al., entitled The Joints On Glucosamine (JOG) Study:  A Randomized, Double-Blind, Placebo-Controlled Trial To Assess The Structural Benefit Of Glucosamine In Knee Osteoarthritis Based On 3T MRI, 60 Arthritis Rheum 725 (2009), concluded that glucosamine was not effective in preventing the worsening of cartilage damage.

**CLASS ACTION COMPLAINT**

it unlikely that future trials will show a clinically relevant benefit of any of the evaluated preparations." *Id*.

24.     On July 7, 2010, Wilkens et al., reported that there was no difference between placebo and glucosamine for the treatment of low back pain and lumbar osteoarthritis and that neither glucosamine nor placebo were effective in reducing pain related disability.  The researchers also stated that, "Based on our results, it seems unwise to recommend glucosamine to all patients" with low back pain and lumbar osteoarthritis. Wilkens et al., Effect of Glucosamine on Pain-Related Disability in Patients With Chronic Low Back Pain and Degenerative Lumbar Osteoarthritis, 304(1) JAMA 45-52 (July 7, 2010).

25.     In 2011, Miller and Clegg, after surveying the clinical study history of glucosamine and chondroitin reported that, "The cost-effectiveness of these dietary supplements alone or in combination in the treatment of OA has not been demonstrated in North America."  Miller, K. and Clegg, D., Glucosamine and Chondroitin Sulfate, Rheum. Dis. Clin. N. Am. 37 (2011) 103-118.

26.     Scientific studies also confirm that the other ingredients in the TriFlex Products are ineffective.  For MSM, a number of studies have either demonstrated no benefit in pain relief or other symptom benefits (e.g., a lack of efficacy).  *See, e.g.*, S. Brien, *et. al.*, Systematic Review Of The Nutritional Supplements (DMSO) And Methylsulfonylmethane (MSM) In The Treatment Of Osteoarthritis (Apr. 17, 2008) (concluding that there is no "definitive evidence that MSM is superior to placebo in the treatment of mild to moderate OA of the knee"); *see also* Debbie, E., et al., Efficacy Of Methylsulfonylmethane Supplementation On Osteoarthritis Of The Knee: A Randomized Controlled Study, 11.50 BMC Complementary and Alternative Medicine (2011); Randomised, Double-Blind, Parallel, Placebo-Controlled Study of Oral Glucosamine, Methylsulfonylmethane and their Combination in Osteoarthritis, 24 Clinical Drug Investigation 353-63 (2004).

**CLASS ACTION COMPLAINT**

27.     White willow bark is also not effective in providing any of the purported joint relief benefits.  In one study by Bigert et al[7] of 127 people, after 6 weeks of treatment, white willow bark provided no joint pain relief and was similar to a placebo while low dose diclofenac, a common non-steroidal anti-inflammatory drug, gave statistically better pain relief.  In Schmid et al,[8] 78 people were evaluated repeatedly over 2 weeks for joint pain, function and stiffness.  All these parameters were not statistically different from placebo at one week, and only joint pain reached statistical significance at 2 weeks, while joint stiffness and joint function remained similar to placebo.

28.     When injected into the joint, several preparations of hyaluronic acid have been approved by regulatory agencies, including the FDA, for pain relief in knee osteoarthritis.  By contrast, oral hyaluronic acid preparations do not show joint health benefits because it is rapidly degraded during digestion to its constituents, two common sugars available in our normal diet.  Therefore, its use in the TriFlex products will not provide any of the joint health benefits claimed.

29.     Only small amounts of *Boswellia Serrata* are absorbed after ingestion and thus  not effective in providing any joint health benefit.  *See, e.g.*, Abdel-Tawb, M., et al., Boswellia Serrata: An Overall Assessment Of In Vitro, Preclinical, Pharmacokinetic And Clinical Data, 50 Clin Pharmacokinet. 349-69 (2011).

30.     Chinese skullcap and black catechu do not have a scientific relationship to joint health in that they are used variously as a food additive, astringent, tannin, and dye.  In short their only use has and still is as a food flavoring and dye.

### The Impact of GNC's Wrongful Conduct

31.     Despite the vast weight of scientific evidence and clinical studies that definitively show the ingredients in the TriFlex Products are ineffective, Defendant

---

[7] Biegert C et al., Efficacy and safety of willow bark extract in the treatment of osteoarthritis and rheumatoid arthritis: results of 2 randomized double-blind controlled trials, Journal of Rheumatology. 31.11 (2004):2121-30.
[8] Schmid B et al., Efficacy and tolerability of a standardized willow bark extract in patients with osteoarthritis: randomized placebo-controlled, double blind clinical trial, Phytotherapy Research. 15.4 (2001) 344-50.

---

**CLASS ACTION COMPLAINT**

conveyed and continues to convey one uniform message: TriFlex Products, with their "maximum", "clinical" strength formulas help to promote mobility and flexibility, improve "joint comfort," and cushion joints.

32.     As the manufacturer and/or distributor of the TriFlex Products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Products and is in a superior position to learn of the effects – and has learned of the effects, or lack thereof – its Products have on consumers.

33.     Specifically, Defendant knew, but failed to disclose, that the TriFlex Products do not provide the joint health benefits represented and that well-conducted, clinical studies have found the ingredients in the TriFlex Products to be ineffective in providing the joint health benefits represented by Defendant.

34.     Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive joint health benefit representations. Plaintiff purchased and consumed a TriFlex Product during the Class period and in doing so, read and considered the Product's label and based his decision to purchase the Product on the joint health benefit representations on the Product packaging. Defendant's joint health benefit representations and omissions were a material factor in influencing Plaintiff's decision to purchase and consume a TriFlex Product.

35.     The only purpose behind purchasing the TriFlex Products is to obtain some or all of the represented joint health benefits. There is no other reason for Plaintiff and the Class to have purchased the Products as the Products are not represented to provide any other benefits and Plaintiff and the Class would not have purchased the Products had they known Defendant's joint health benefit statements were false and misleading and that clinical cause and effect studies have found the ingredients to be ineffective for the represented joint health benefits.

**CLASS ACTION COMPLAINT**

36.     As a result, Plaintiff and the Class members have been injured in fact in their purchases of the TriFlex Products in that they were deceived into purchasing Products that do not perform as advertised.

37.     Defendant, by contrast, reaped enormous profit from its false marketing and sale of the TriFlex Products.

## CLASS DEFINITION AND ALLEGATIONS

38.     Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against GNC for violations of California law and similar laws in other states:

> **Multi-State Class**
> All persons in California and states with similar laws, who, within the applicable statute of limitations, purchased the TriFlex Products.
>
> Excluded from the Class are GNC, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the TriFlex Products for resale.

39.     In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated California residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> **California Class**
> All California residents who, within the applicable statute of limitations, purchased the TriFlex Products.
>
> Excluded from the Class are GNC, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the TriFlex Products for resale.

40.     **Numerosity.**  The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of the TriFlex Products who have been

**CLASS ACTION COMPLAINT**

damaged by GNC's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

41. **Existence and Predominance of Common Questions of Law and Fact.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

(1)    whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(2)    whether GNC's alleged conduct violates public policy;

(3)    whether the alleged conduct constitutes violations of the laws asserted;

(4)    whether GNC engaged in false or misleading advertising;

(5)    whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(6)    whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

42. **Typicality.**  Plaintiff's claims are typical of the claims of the members of the Class because, inter alia, all Class members were injured through the uniform misconduct described above, were subject to GNC's deceptive joint health benefit representations including the representations that accompanied each and every box of the TriFlex Products. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

43. **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

**CLASS ACTION COMPLAINT**

44.   **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.   The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against GNC.   It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.   Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.   Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

45.   Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent GNC from engaging in the acts described, and requiring GNC to provide full restitution to Plaintiff and Class members.

46.   Unless a Class is certified, GNC will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.   Unless a Class-wide injunction is issued, GNC will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

47.   GNC has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

**COUNT I**
**Violation of Business & Professions Code §17200, et seq.**
**(Multi-State or, in the Alternative, California-only Class)**

**CLASS ACTION COMPLAINT**

48.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

49.     Plaintiff brings this claim individually and on behalf of the Class.

50.     As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of GNC's conduct because he purchased a TriFlex Product in reliance on GNC's joint health benefit statements detailed above, but did not receive a product that provided the represented joint health benefits.

51.     The Unfair Competition Law, Business & Professions Code § 17200, et seq. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.

52.     In the course of conducting business, GNC committed "unlawful" business practices by, inter alia, making the joint health benefit representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) and Business & Professions Code §§ 17200, et seq. Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

53.     In the course of conducting business, GNC committed "unfair" business practices by, inter alia, making the joint health benefit representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the TriFlex Products in its advertising campaign, including the Products' packaging, as set forth more fully herein.   There is no societal benefit from false advertising, only harm.  Plaintiff and other Class members paid money for promised joint health benefits which they did not receive.   While Plaintiff and Class members were harmed, GNC was unjustly enriched by its false joint health benefits misrepresentations and omissions.  Because the utility of GNC's conduct (zero) is outweighed by the gravity of the harm Plaintiff and Class Members suffered, GNC's conduct is "unfair" having

**CLASS ACTION COMPLAINT**

offended an established public policy.  Further, GNC engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

54.    Further, as stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers.  GNC's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, et seq.

55.    There were reasonably available alternatives to further GNC's legitimate business interests, other than the conduct described herein.

56.    Business & Professions Code § 17200, et seq., also prohibits any "fraudulent business act or practice."

57.    In the course of conducting business, GNC committed "fraudulent business act or practices" by, inter alia, making the joint health benefit representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the TriFlex Products in its advertising campaign, including the Products' packaging, as set forth more fully herein.  GNC misrepresented on each and every TriFlex Product bottle/box that its TriFlex Products, with their "maximum", "clinical" strength formulas help to promote mobility and flexibility, improve "joint comfort," and cushion joints when, in fact, the competent scientific evidence is that the ingredients in the TriFlex Products are not efficacious and do not work as represented.

58.    GNC's actions, claims, omissions and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, et seq.

59.    Plaintiff and other members of the Class have in fact been deceived by GNC's material joint health benefit representations and omissions. GNC's deception has caused harm to Plaintiff and other members of the Class who purchased the TriFlex

Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

60. GNC knew, or should have known, that its material representations and omissions would be likely to deceive the consuming public and result in consumers purchasing GNC's TriFlex Products and, indeed, intended to deceive consumers.

61. As a result of its deception, GNC has been able to reap unjust revenue and profit.

62. Unless restrained and enjoined, GNC will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

63. Plaintiff, on behalf of himself and all others similarly situated, and the general public, seeks restitution of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting GNC from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## **COUNT II**
### **Violations of the Consumers Legal Remedies Act – Civil Code §1750 *et seq.***
### **(Multi-State or, in the Alternative, California-only Class)**

64. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

65. Plaintiff brings this claim individually and on behalf of the Class.

66. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act"), and similar laws in other states. Plaintiff is a "consumer" as defined by California Civil Code §1761(d). The TriFlex Products are "goods" within the meaning of the Act.

67. GNC violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the TriFlex Products:

**CLASS ACTION COMPLAINT**

(5)    Representing that [the TriFlex Products have] . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

\*         \*         \*

(7)    Representing that [the TriFlex Products are] of a particular standard, quality or grade . . . if [it is] of another.

\*         \*         \*

(9)    Advertising goods . . . with intent not to sell them as advertised.

\*         \*         \*

(16)    Representing that [the TriFlex Products have] been supplied in accordance with a previous representation when [they have] not.

68.    GNC violated the Act by representing and failing to disclose material facts in its advertising campaign including the TriFlex Products labels and packaging, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

69.    Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of GNC and for restitution and disgorgement.

70.    Pursuant to §1782 of the Act, Plaintiff notified GNC in writing by certified mail of the particular violations of §1770 of the Act and demanded that GNC rectify the problems associated with the actions detailed above and give notice to all affected consumers of GNC's intent to so act.  A copy of the letter is attached hereto as Exhibit B.

71.    If GNC fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

72.    GNC's conduct is fraudulent, wanton and malicious.

19

CLASS ACTION COMPLAINT

73.    Pursuant to §1780(d) of the Act, attached hereto as Exhibit C is the affidavit showing that this action has been commenced in the proper forum.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

A.    Certifying the Class as requested herein;

B.    Awarding restitution and disgorgement of GNC's revenues to Plaintiff and the proposed Class members;

C.    Awarding injunctive relief as permitted by law or equity, including enjoining GNC from continuing the unlawful practices as set forth herein, and directing GNC to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

D.    Ordering GNC to engage in a corrective advertising campaign;

E.    Awarding attorneys' fees and costs; and

F.    Providing such further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial of his claims by jury to the extent authorized by law.

DATED:  April 18, 2013          BONNETT, FAIRBOURN, FRIEDMAN
                                                         & BALINT, P.C.


                                              s/*Patricia N. Syverson*
                                              ELAINE A. RYAN (*To be admitted Pro Hac Vice*)
                                              PATRICIA N. SYVERSON (203111)
                                              LINDSEY M. GOMEZ-GRAY (*To be admitted Pro Hac Vice*)
                                              2325 E. Camelback Road, Suite 300
                                              Phoenix, Arizona  85016
                                              eryan@bffb.com
                                              psyverson@bffb.com
                                              lgomez-gray@bffb.com
                                              Telephone:   (602) 274-1100

20

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
MANFRED P. MUECKE (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com
Telephone:  (619) 756-7748

STEWART M. WELTMAN LLC
STEWART M. WELTMAN (*To be admitted Pro Hac Vice*)
53 W. Jackson Suite 364
Chicago, IL 60604
Telephone: 312-588-5033
(Of Counsel Levin Fishbein Sedran & Berman)

21

**CLASS ACTION COMPLAINT**